MASON & HAMMOND ORGAN CO. (HAMMOND v.). See Case No. 6,004.

MASON LUMBER CO. (BUCHTEL v.). See Case No. 2,077.

## Case No. 9,258.

### The MASSACHUSETTS.

[10 Ben. 177.] [1]

District Court, E. D. New York. Nov., 1878.

DAMAGE—EXCESSIVE SPEED IN NARROW CHANNEL—COSTS.

1. The M., a large passenger steamboat, passed through the channel between Blackwell's Island and New York City with excessive speed, being behind time. A canal-boat loaded with coal was lying then at a well-known and frequented place for discharging such vessels. The swell thrown by the M. rolled upon the canal-boat and sank her at once, the captain and his wife jumping into the river to save their lives. Thirty days afterwards the owner of the cargo of coal gave notice to the owners of the M. of a claim for damages and thereafter filed a libel to recover against the steamer: Held, That the canal-boat was properly laden and made fast, and that, though such boats as the M. pass the place daily, no other such accident was shown to have occurred and that the case was not therefore one of inevitable accident.

2. The M. was not in fault in going through that channel, or in going too near the canal-boat, but was in fault in running with excessive speed and the loss was due to such fault and the steamboat was liable therefor.

[Cited in The Rhode Island, 24 Fed. 295.]

3. The court, to mark its disapprobation of the delay in giving notice of the claim to the M., refused to give costs to the libellant.

In admiralty.

Treadwell Cleveland, for libellant.

Wm. P. Dixon, for claimants.

BENEDICT, District Judge. This action is brought by the owner of a cargo of coal laden on board the canal-boat Dr. J. N. Huntley, to recover the damages arising from the sinking of that canal-boat and her cargo on the morning of the 9th of June, 1877.

It appears that this coal was laden on board the canal-boat at Port Johnson, and safely transported therein to the bulk-head at the foot of East 61st St., New York. The boat arrived at the bulk-head on the evening of June 8th, and was made fast outside of a schooner then lying alongside the bulk-head. At about 9 o'clock the next morning the steam-boat Massachusetts, one of the large passenger boats, engaged in making daily trips through the Sound, passed between the place where the canal-boat lay and Blackwell's Island, and in so doing raised a swell that broke over the canal-boat and sank her, causing the damage sued for.

The libel charges among other faults that the accident arose from the negligence of those navigating the Massachusetts in passing the canal-boat at an improper and unlawful rate of speed. The answer denies the negligence charged and avers that the accident arose from negligence on the part of those in charge of the canal-boat in that she was not properly secured at the bulk-head,

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

and in that she was too deeply laden, and in that proper exertion was not put forth to avoid damage from the swell. The proofs show that the place where the canal-boat was moored was a well-known and much frequented discharging place for vessels of this class. and that so far as is known the present is the only instance of damage caused to any vessel lying there by the swells of passing steamboats, although the boat here proceeded against and others of her class pass the locality daily. The evidence also shows that this canal-boat was properly laden and that the accident cannot be attributed either to an excess of cargo or to the manner in which it was laden or to the manner in which the canal-boat was made fast or to any want of care or skill on the part of those in charge of the boat. The case is therefore one either of inevitable accident or of negligence on the part of the steamboat. There is no room for doubt that there was negligence on the part of the steamboat in regard to her speed.

At the place of the accident the river is narrow but not so narrow as in some other parts of that channel, and although it is not very clearly shown that there was any necessity to pass so near the bulk-head as the Massachusetts did on this occasion, I do not hold her liable by reason of passing nearer to the canal-boat than she was entitled to do. Nor do I find her guilty of fault in passing Blackwell's Island by the channel on the New York side. She had an undoubted right to go down that channel, there being no question as to her ability to pass without endangering the safety of boats made fast where this boat was. It is constantly done by boats of large dimension with safety to ·all. But negligence is proved against the Massachusetts in regard to her speed. While boats of the large size of the Massachusetts have the right to navigate as well as boats of a smaller class, circumstances often arise when it becomes the duty of such boats to slack their speed because of the great swell they produce when moving rapidly. This is a known duty and its performance has been frequently observed. It has been enjoined by the courts in well-considered cases. The C. H. Northam [Case No. 2,690]; The Morrisania [Id. 9,838], and cases there cited. It is a duty that attaches as well in the case of passing a vessel at anchor or made fast at the pier as when passing a vessel in motion. The degree of care required of course varies with the circumstances.

In this instance the proof is clear that the Massachusetts was going at more than her ordinary rate of speed. Her unusual speed was the subject of remark to bystanders on the shore before the accident happened, and it is proved by several witnesses. This evidence receives confirmation from the fact that the steamboat was behind time. This unusual speed caused an unusual swell, so that the waves broke over the canal-boat and sank her at once, the captain and his wife jumping into the river for the safety of their lives.

Against such a swell as the evidence shows to have been thus caused the canal-boat was unable to protect herself by any reasonable care, and for the damage thus caused to the libellant's coal the steamboat must be responsible, because she had no right to proceed at extraordinary speed in a narrow channel like this, where vessels were moored as this canal-boat was. "Her undoubted right to the navigation of the river is subject to the restriction that it must be exercised in a reasonable and careful manner and do no injury to others that care and prudence may avoid." Hunt, J., The Morrisania [supra].

The libellant is therefore entitled to a decree, but I give no costs for this reason: It does not appear that any notice of this claim was given to the steamboat until some thirty days after the damage was known to have occurred. The ease with which fictitious cases of damage done at the piers can be got up and the difficulty in being able to meet any such claim unless promptly informed of its existence, coupled with the fact that it is seldom if ever possible for those on board the steamboat to know when damage is done at the piers, seem to require some rule that shall insure notice being at once given to the steamboat when it is intended to charge her with liability for damage done at the piers by her swell.

As tending to secure this result I have on former occasions declared my intention to refuse costs in a case of this character, when prompt notice of the claim has not been given. To that I adhere, and no injustice can arise from throwing the burden of showing such notice upon the libellant. In this case no prompt notice is proved.

Let a decree be entered in favor of the libellant without costs and let it be referred to a commissioner to take proof of the amount of the loss.